**UNITED STATES of America,
Appellant,**

v.

**Mary Regina Elizabeth GORSUCH,
Defendant, Appellee.**

No. 03–2337.

United States Court of Appeals,
First Circuit.

Heard April 6, 2004.

Decided July 14, 2004.

Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellant.

Gregg D. Bernstein with whom Lipman, Katz & McKee, P.A. was on brief, for appellee.

Before SELYA, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and HOWARD, Circuit Judge.

* Of the Eighth Circuit, sitting by designation.

HOWARD, Circuit Judge.

On May 6, 2002, Mary Gorsuch entered a branch of the Fleet Bank in Bangor, Maine; brandished an unloaded semiautomatic handgun; robbed three teller stations of a total of $8,304; and walked out the door. Within minutes, a Bangor police officer arrested the dazed Gorsuch near the bank. Subsequently, a grand jury indicted Gorsuch on one count of armed bank robbery, *see* 18 U.S.C. §§ 2113(a) and (d), and one count of brandishing a firearm in relation to a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(ii).

Gorsuch, who more than once has been involuntarily admitted to a mental health facility and bears a diagnosis of paranoid schizophrenia, entered a plea of not guilty by reason of insanity. The case proceeded to trial, the bulk of which involved mental health professionals testifying to the nature and severity of Gorsuch's illness. At the conclusion of two days of testimony, the jury rejected Gorsuch's insanity defense within approximately two hours and convicted her on both counts of the indictment.

The probation department thereafter prepared a presentence investigation report (PSI) that applied the 2002 sentencing guidelines and concluded that Gorsuch's total offense level on Count One should be 22 (yielding a guidelines sentencing range of 41 to 51 months because Gorsuch had no criminal history) and that Gorsuch was subject to a statutorily mandated seven-year consecutive term on Count Two. The PSI took the position that Gorsuch was not entitled to an acceptance-of-responsibility adjustment under U.S.S.G. § 3E1.1 because she had put the government to the burden of proceeding to trial. The PSI also identified no grounds for a downward departure.

Gorsuch objected to these two aspects of the PSI, arguing that she was entitled to the acceptance-of-responsibility adjustment because she had never disputed the historical facts alleged by the government, and that she was entitled to a downward departure on the ground of diminished mental capacity under the guidelines policy statement regarding such departures— U.S.S.G. § 5K2.13. The probation department disagreed with Gorsuch's professed entitlement to an acceptance-of-responsibility reduction because Gorsuch had disputed her factual guilt and thus was not one of the rare defendants who, despite going to trial, might be eligible to the adjustment. *See* U.S.S.G. § 3E1.1, cmt. n. 2 ("In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).”). The probation department also responded that a diminished-capacity departure was unwarranted because U.S.S.G. 5K2.13(2) disallows such departures where, *inter alia*, "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence."

At sentencing, the district court sided with Gorsuch on these two issues. As to Count One, the court concluded that Gorsuch's total offense level should be 19 (and not 22, as recommended by the probation department) because Gorsuch had accepted responsibility for her offense, *see* U.S.S.G. § 3E1.1(a) (directing sentencing courts to decrease the offense level by 2 levels for such defendants), and because Gorsuch was eligible for the additional 1–level decrease specified in U.S.S.G.

§ 3E1.1(b) (permitting defendants with offense levels of 16 or greater prior to any acceptance of responsibility adjustment to obtain an additional reduction of 1 level if they timely provide complete information to the government concerning their involvement in the offense or timely notify the authorities of their intention to plead guilty). The court then sentenced Gorsuch to 30 months' imprisonment on Count One, which is the low end of the guideline sentencing range for a defendant with a total offense level of 19 who lacks a criminal history.

As to Count Two, the court concluded that a diminished-capacity downward departure was warranted because, although Gorsuch had committed a crime involving actual violence and a serious threat of violence, Gorsuch would not be a threat to the public if she took her medication. The court then departed downward from the 84–month consecutive sentence recommended in the PSI and imposed a 12–month consecutive sentence on Count Two. Although the government opposed this downward departure, it did not alert the court at the sentencing hearing to the fact that the seven-year consecutive sentence recommended in the PSI was *statutorily required* and therefore mandatory (at least where, as here, the government had not filed a cooperation-based motion for a downward departure). *See, e.g., United States v. Burke,* 237 F.3d 741, 742–45 (6th Cir.2001); *see also* U.S.S.G. § 5G1.1.

The government has brought this appeal to challenge each of these sentencing determinations. At the outset, we think it important to state that we are not blind to why the district court sentenced Gorsuch as it did in this sad and poignant case. While the jury readily concluded that Gorsuch had not made the demanding showing required to establish legal insanity, *see* 18 U.S.C. §§ 17(a) and (b) (requiring a defen-

dant seeking to establish an insanity defense to prove "by clear and convincing evidence" that, at the time of the commission of the acts constituting the offense, the defendant "was unable to appreciate the nature and quality or the wrongfulness of his acts" because of a "severe mental disease or defect"), the record suggests that Gorsuch is afflicted by a serious mental illness but for which she probably never would have committed the crimes of which she stands convicted. So too does the record indicate that Gorsuch had no premeditated intention of harming anyone on the day of her crimes, and that she is likely to be a law-abiding citizen if she takes medication to control her illness. One cannot help but cringe at the 125–month prison sentence recommended in the PSI for this troubled mother of three who otherwise lacks a criminal history.

Nonetheless, courts have little leeway in circumstances where a defendant's mental illness does not cause legal insanity. *See* 18 U.S.C. § 17(a) (stating that, absent insanity, "[m]ental disease or defect does not otherwise constitute a defense"); *United States v. Schneider,* 111 F.3d 197, 201 & n. 2 (1st Cir.1997) (observing that the final sentence of 18 U.S.C. § 17(a) precludes defenses of diminished responsibility to excuse or mitigate an offense). In this case, the government exercised its discretion to seek an indictment of Gorsuch for two serious crimes—one of which carries with it a lengthy mandatory sentence—and the jury quickly concurred with the government that Gorsuch was criminally responsible for her conduct. The district court concluded that the sentencing guidelines afforded it the flexibility under the circumstances to credit Gorsuch for acceptance of responsibility and to impose a sentence below the range usually applicable to persons convicted of brandishing a firearm in relation to a crime of violence, but the government says that the court's conclu-

sions were based upon a misreading of the guidelines and the statute of conviction. And we are constrained to agree.

■ The government advances several legal and record-based arguments in support of its assertion that the district court erred in reducing Gorsuch's sentence on Count One for acceptance of responsibility, including an argument that binding circuit precedent precludes a decrease where the defendant goes to trial to assert a recognized defense to criminal charges but fails to persuade the jury. *See United States v. Chhien,* 266 F.3d 1, 11 (1st Cir.2001) (newly constituted panels must adhere to prior panel decisions). We think that this argument is correct. In *United States v. Bello,* 194 F.3d 18 (1st Cir.1999), a panel of this court upheld a district court's refusal to grant an acceptance-of-responsibility adjustment to a defendant who did not contest that he had engaged in the conduct alleged to be the *actus reus* but (unsuccessfully) denied criminal responsibility on grounds of self-defense. *See id.* at 20–22, 28. We did so, in part, because the adjustment is available only to defendants who go to trial " 'to assert and preserve issues *that do not relate to factual guilt,' " id.* at 28 (quoting U.S.S.G. § 3E1.1, cmt. n. 2) (emphasis in original), and because "[a]n assertion of self-defense is a denial of an essential factual element of guilt for the purposes of this guideline section," *id.* Like the defendant in *Bello* who denied the government's allegation that he had acted without legal justification, Gorsuch denied an essential *factual* element of guilt when she asserted at trial that she lacked the capacity to form the *mens rea* (and thus lacked the *mens rea* ) necessary for the imposition of criminal responsibility. We thus do not see how the *Bello* rule and a merits ruling upholding the acceptance-of-responsibility adjustment made to Gorsuch's offense level can coherently exist

side-by-side within this circuit. *See also United States v. Crass,* 50 F.3d 81, 84 (1st Cir.1995) (observing that a criminal defendant "jeopardiz[es]" his entitlement to an acceptance-of-responsibility adjustment by demanding a trial on whether he acted with the requisite criminal intent).

Gorsuch has no real response to this argument other than to point out that, in *United States v. Ellis,* 168 F.3d 558 (1st Cir.1999), we referred to *United States v. Barris,* 46 F.3d 33, 35 (8th Cir.1995), a case in which the Eighth Circuit stated that an assertion of an insanity defense at trial is not an automatic bar to an acceptance-of-responsibility reduction. *See Ellis,* 168 F.3d at 564; *see also United States v. Paster,* 173 F.3d 206, 221 n. 12 (3d Cir.1999) (indicating that insanity defense does not preclude acceptance-of-responsibility adjustment); *United States v. Fells,* 78 F.3d 168, 172 (5th Cir.1996) (similar). The short answer to Gorsuch's rejoinder is that the *Ellis* panel adverted to *Barris* merely as an illustration, without in any way endorsing the Eighth Circuit's holding. In all events, *Ellis* predated the *Bello* holding by some eight months, and therefore, any attempt to read something substantive into *Ellis's* citation to *Barris* necessarily comes to naught. More importantly, *Barris* (and similar cases) do not explain how a defendant who has contested the government's allegation that she acted with the requisite *mens rea* has not at the same time contested her factual guilt and thereby declined to accept responsibility for the charged offense. Perhaps the *Barris* court was of the opinion that one need only admit the underlying historical facts—*i.e.,* admit that she engaged in the conduct constituting the alleged *actus reus*—in order to be eligible for the adjustment. But the *Bello* panel adopted a rule that, in a very similar context, treats challenges to the government's "mental state" allegations as challenges to

factual guilt. *See also United States v. Mikutowicz,* 365 F.3d 65, 75–77 (1st Cir. 2004) (acceptance-of-responsibility adjustment not appropriate where defendant admits to the *actus reus* but goes to trial to contest the government's allegation that his conduct was willful). If Gorsuch believes that we should abandon this approach in favor of the one exemplified by *Barris,* she must address her argument to the *en banc* court. As matters now stand, Gorsuch must be resentenced on Count One.

The government also presents more than one legal and record-based argument in support of its assertion that the district court erred in departing downward on the ground of diminished capacity with respect to Count Two. First, the government asks us to vacate the court's mistaken imposition of a sentence below the statutory minimum under Fed.R.Crim.P. 52(b). Second, the government argues that a diminished capacity departure is unwarranted on the facts of this case. Both arguments are convincing.

■ In *United States v. Rodriguez,* 938 F.2d 319 (1st Cir.1991), we held that a sentencing court's imposition of a prison term below the minimum mandated by Congress constitutes "error" that is "plain" and that "affects substantial rights" within the meaning of Fed. R.Crim.P. 52(b). *See id.* at 322. Gorsuch does not dispute that, under the *Rodriguez* principle, the government has established three of the four prerequisites for an exercise of this court's discretion to correct errors under Rule 52(b). *See, e.g., United States v. Cotton,* 535 U.S. 625, 631, 122

S.Ct. 1781, 152 L.Ed.2d 860 (2002) (detailing the requirements for error-correction under the Rule). But Gorsuch contends that, because of the sad facts of this case and the lengthy prison term she would have faced had the district court not departed downward, the government has not established the fourth requirement: that the error "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 631–32, 122 S.Ct. 1781 (citation and internal quotation marks omitted); *see also United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We disagree. While the facts of this case are undeniably sad, we cannot overlook that this case involves the mistaken imposition of a one-year sentence where Congress has established a minimum mandatory term of seven years. To permit such a sentence to stand because of the government's forfeiture [1] would, we believe, call into question the integrity and fairness of Gorsuch's sentencing proceeding.

■ Moreover, were there any room for doubt as to the exercise of our discretion, that doubt would be dissipated here by the absence of any legally cognizable basis for a downward departure on the ground of diminished capacity. The policy statement on diminished capacity departures set forth in U.S.S.G. § 5K2.13 prohibits such a departure if, *inter alia,* "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence . . . ." The sensible reading of this provision is

---

1. In characterizing the error here as a forfeiture, we reject out of hand Gorsuch's suggestion that the government knowingly waived its right to insist upon the imposition of statutory minimum mandatory sentence. *See Olano,* 507 U.S. at 733, 113 S.Ct. 1770 (discussing the difference between a "forfeiture," which may be corrected under Rule 52(b), and a "waiver," which is the "intentional relinquishment or abandonment of a known legal right" and which cannot be undone under Rule 52(b)) (citation and internal quotation marks omitted). Nothing in the record supports such a finding of waiver.

that the facts and circumstances of the offense *per se* indicate a need to protect the public (and thus preclude a departure) if they involved actual violence or a serious threat of violence. A number of other courts have so read this guideline without explicitly considering any alternative interpretation. *See, e.g., United States v. Sheehan,* 371 F.3d 1213, 1216 (10th Cir.2004); *United States v. Woods,* 359 F.3d 1061, 1065 (8th Cir.2004); *United States v. Dela Cruz,* 358 F.3d 623, 625 (9th Cir.2004); *United States v. Cravens,* 275 F.3d 637, 641–42 (7th Cir.2001); *United States v. Askari,* 159 F.3d 774, 779–80 (3d Cir.1998).

Nonetheless, at least one court of appeals has construed the guideline in much the same manner as did the district court: as precluding a departure only if the facts and circumstances of the offense involved actual violence or a serious threat of violence *and* if the sentencing court further and independently finds, on the basis of evidence other than that pertaining to the offense facts, that there is an ongoing need to protect the public. *See United States v. Riggs,* 370 F.3d 382, 385 (4th Cir.2004); *see also id.* at 388 (Duncan, J., dissenting). (Recall that the district court found, on the basis of evidence unrelated to that comprising the *actus reus* of Gorsuch's crimes, that there was no such need so long as Gorsuch takes her medication). We respectfully disagree with this interpretation of U.S.S.G. § 5K2.13(2). The text of the guideline does not contemplate an open-ended inquiry into the defendant's likely future dangerousness to the public. Rather, it circumscribes the inquiry to "the facts and circumstances of the defendant's offense" and, through its use of the word "because," compels the sentencing court to conclude that there *is* a need to protect the public if those facts and circumstances "involved actual violence or a serious threat of violence."

The history of the enactment of the applicable version of U.S.S.G. § 5K2.13(2) supports our reading. Prior to 1998, the guideline stated that diminished-capacity departures were available only if the defendant "committed a non-violent offense...." *See* U.S.S.G. app. C, amend. 583. Gorsuch does not dispute the government's assertion that she would have been ineligible for a departure under this version of the guideline given the nature of her criminal conduct—an armed bank robbery in which she brandished a firearm. Thus, a departure in this case would be warranted only if the amendment eliminated the requirement that the underlying offense be non-violent.

But, in amending the guideline, the Sentencing Commission did not eliminate this requirement by making a substantive change to the law of diminished-capacity departures. Instead, it sought to clarify, *see Askari,* 159 F.3d at 779–80 (amendment 583 is a clarifying amendment), a textual ambiguity within the guideline that had divided the circuits: whether the term "non-violent offense" imports the definition of "crime of violence" from U.S.S.G. § 4B1.2, the career-offender guideline. Under that guideline, a crime is categorically labeled either violent or non-violent without regard to whether the underlying offense facts involved actual or threatened violence. *See United States v. Winn,* 364 F.3d 7, 9 (1st Cir.2004). Some courts had followed the same approach in determining eligibility for departures under U.S.S.G. § 5K2.13, but others had permitted an examination of the underlying offense facts. *See* U.S.S.G. app. C, amend. 583 (detailing the circuit split). The amendment clarifies that a departure is permissible, irrespective of whether the offense would qualify as a crime of violence under U.S.S.G. § 4B1.2, if the facts and circumstances of the offense did not demonstrate a need to protect the public (so long as

additional requirements, not relevant here, also were met). *See id.* But it in no way suggests that a need to protect the public is now to be determined (in this context) on the basis of evidence other than that pertaining to the offense conduct.

Here, as Gorsuch herself concedes, the district court supportably found that Gorsuch's offense conduct involved, at the very least, a serious threat of violence. This finding should have ended the court's inquiry into Gorsuch's eligibility for a diminished-capacity departure and compelled the conclusion that Gorsuch is not so eligible with respect to her crimes.

■ Let us be perfectly clear. We do not suggest that Rule 52(b) will require reversal of every sentence imposed below a statutory minimum even when the government has failed to object. Indeed, the opposite is true. Such a situation does, however, present a plain error which, if it affects substantial rights and the integrity of the proceedings, we may choose in our discretion to recognize. This is such a case. Accordingly, Gorsuch must also be resentenced on Count Two.

For the reasons set forth above, we *vacate* Gorsuch's sentences on Counts One and Two and *remand* with instructions that she be resentenced in accordance with this opinion.

*So ordered.*